IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REXEL USA, INC., d/b/a GEXPRO,<br><br>    Plaintiff,<br><br>v.<br><br>ITS SOLAR, LLC and RICHARD C. SCHMIDT, JR.,<br><br>    Defendants. | Case No. 21-CV-1456–NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff/Counterclaim Respondent Rexel USA, Inc. d/b/a Gexpro ("Gexpro") seeks to dismiss Counterclaims filed by Defendants/Counterclaimants ITS Solar, LLC ("ITS Solar") and Richard Schmidt (Doc. 21). For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

Gexpro supplies electrical parts and components. (Doc. 1, p. 1). ITS Solar transacts business in the solar energy industry. (*Id*.). Schmidt and his father Richard Schmidt, Sr., are the two members of ITS Solar. (*Id*.).

According to Defendants, ITS Solar and Gexpro's business relationship began when ITS Solar's customer, McCarthy Building Companies, Inc. ("McCarthy"), "had concerns about ITS Solar's financial ability to purchase raw materials in sufficient volumes to satisfy McCarthy's large needs." (Doc. 13, p. 4). ITS Solar alleges that it was part of a "three-way business relationship whereby Gexpro sold raw materials to ITS

Solar, which in turn created finished products that were sold to Gexpro for further sale to McCarthy." (*Id.*). "Under the foregoing arrangement, Gexpro received payments directly from McCarthy and was to withhold as its own payment the portion of McCarthy payments corresponding to raw material purchases from Gexpro by ITS Solar, and to pay the remainder to ITS Solar." (*Id.*).

On or about September 23, 2020, Defendants delivered a promissory note to Gexpro. (Doc. 1, p. 2). Defendants have not made payments on the promissory note. (*Id.* at p. 3). Thus, Gexpro commenced this action against Defendants in November 2021. (Doc. 1). On March 14, 2022, Defendants answered and filed three counterclaims against Gexpro: defamation (Count I); tortious interference with business expectancy (Count II); and fraudulent inducement (Count III). (Doc. 13). Gexpro timely filed a Motion to Dismiss Defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 21).[1]

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the claims, not to determine the merits of the case or decide who will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a party only needs to allege enough facts to state a claim for relief that is plausible on its

---

[1] The Court has subject matter jurisdiction over this action on the basis of diversity of citizenship. The parties are minimally diverse, as Gexpro is a Delaware corporation with its principal place of business in Texas (Doc. 1); ITS Solar is citizen of Illinois as its only two members, Schmidt and his father, are both are citizens of Illinois (Doc. 13). The amount of controversy exceeds $75,000.00, exclusive of interest and costs, because the promissory note at issue allegedly has a balance of $2,856,897.62, plus interest. (Doc. 1, p. 3).

face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A party need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the nonmovant. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

## ANALYSIS

I.  **Defamation (Count I)**[2]

  A.  *Pleading Requirements*

In a diversity case, the Court applies state law to substantive issues. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013). Here, the parties have not raised a conflict of law issue and have instead briefed the issues on the merits under Illinois law. Thus, the Court will apply the law of Illinois.

While Illinois law applies, "the Seventh Circuit has made clear that when a [party] files a claim in federal court asserting defamation *per se* under Illinois law, such a claim is governed by the federal notice pleading rule, not the Illinois pleading rule." *Marshall v.*

---

[2] The Court presumes, like Gexpro, "that [D]efendants seek to set forth a defamation *per se* claim, as they do not plead special damages, as would be required in a defamation *per quod* case." (Doc. 21, p. 3)

*Vill. of Island Lake, Illinois*, 2019 WL 3801863, at *6 (N.D. Ill. Aug. 13, 2019) (citing *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003) ("[T]he Illinois pleading rule . . . of course does not apply in federal court."); *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 903 (7th Cir. 2007) ("[T]he heightened pleading standard that the Illinois courts use does not apply in federal court to a claim of defamation *per se*.")).

Thus, Defendants' defamation counterclaim must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "In the context of a defamation claim, Rule 8 'does not require that the complaint recite verbatim the allegedly defamatory statement.'" *Marshall*, 2019 WL 3801863, at *6 (quoting *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 728 (N.D. Ill. 2015)).

Gexpro asserts that Defendants fail to allege "who the statement was made by, or to, or when, or how." (Doc. 21, p. 3). In response, Defendants explain that they did not identify who the statement was made to "primarily [ ] as a courtesy to McCarthy as a valued past (and hopefully future) customer, it was advisable to avoid entangling a McCarthy employee in this matter via a public pleading, especially when the employee could be identified either informally or less publicly through formal discovery." (Doc. 26, p. 4). Next, "[r]egarding the timing of the defamatory statement, upon information and belief, it was made in September of 2020, though the precise date in September may require further investigation in discovery." (*Id*. at p. 5). Defendants did not address who made the statement, but passingly note "Gexpro and McCarthy are corporations, which

can only communicate through their employees." (*Id*. at p. 4). Defendants also did not address how the statement was made.

Defendants' defamation counterclaim is sparse: "Gexpro tortiously interfered with this business expectancy by suggesting to McCarthy, incorrectly, that ITS Solar would be unable to complete the work due to inability to purchase raw materials." (Doc. 13, p. 5). Defendants merely indicate who was speaking and what made the statements defamatory. Still, Defendants' defamation counterclaim is sufficient to make Gexpro aware of the basis for Defendants' defamation claim. "Further details can be developed in discovery." *Marshall*, 2019 WL 3801863, at *6. Thus, Defendants' counterclaim satisfies the notice pleading requirements.

B. *Whether the Defamatory Statement Was an Expression of Opinion*

"In defamation actions, statements that are capable of being proven true or false are actionable, whereas opinions are not." *Seitz-Partridge v. Loyola Univ. of Chicago*, 987 N.E.2d 34, 43 (Ill. App. Ct. 2013) (citing *Moriarty v. Greene*, 732 N.E.2d 730, 739 (Ill. 2000)). "Whether a statement is an opinion or assertion of fact is a question of law." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (citing *Moriarty*, 732 N.E.2d at 740). "To aid in this legal determination, courts ask: (1) whether the statement 'has a precise and readily understood meaning;' (2) whether the statement is factually verifiable; and (3) whether the 'literary or social context signals that [the statement] has factual content.'" *Id*. (quoting *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 840 (Ill. 2006)). Further, "[t]he test is restrictive: a defamatory statement is constitutionally

protected only if it cannot be reasonably interpreted as stating actual fact." *Solaia*, 852 N.E.2d at 840.

Gexpro argues "the unidentified speaker suggested ITS Solar would not be able to complete its work, which is clearly a statement of the speaker's subjective view, an opinion." (Doc. 21, p. 4). If this was the only allegation surrounding Defendants' defamation counterclaim, then Gexpro would be correct as there are numerous reasons or opinions why ITS Solar would be unable to complete its work. But Gexpro allegedly suggested that ITS Solar would be unable to complete the work "due to inability to purchase raw materials." (Doc. 13, p. 5). The verifiable factual statement here is ITS Solar's ability to purchase raw materials. This statement is not merely a subjective assertion because Gexpro allegedly sold raw materials to ITS Solar. (*Id.* at p. 4).

    C. *Whether the Defamatory Statement is Subject to an Innocent Construction*

"Even if a statement falls into one of the recognized categories of words that are actionable *per se*, it will not be found actionable *per se* if it is reasonably capable of an innocent construction." *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996). Under the "innocent-construction rule," a court must consider the statement "*in context*, giving the words and implications therefrom their natural and obvious meaning." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992) (emphasis added). For example, in *Green v. Rogers*, 917 N.E.2d 450, 462-64 (Ill. 2009), the Illinois Supreme Court held that the terms "abuse" and "misconduct" were not sufficiently precise or particular to support a defamation *per se* claim because they were "words with very broad meanings." The Court in *Green* explained that the primary definition of "abuse" is to

"reproach coarsely," but "abuse" can also mean "violate sexually." *Id*. at 464. The Court explained that the primary definition of "misconduct" is "mismanagement," but "misconduct" can also mean "the intentional violation of a rule of law or standard of behavior," or even "sexual immorality." *Id*. Next, the Court analyzed the context of the alleged statements noting that "the alleged statements were followed immediately by multiple assurances from defendant that, although he would not be assigned a formal coaching position, plaintiff would be free to assist his son's team 'with practices and pre-game activities.'" *Id*. The Court concluded by explaining the following:

> *given this context*, we do not believe it reasonable to conclude that defendant was accusing plaintiff of the types of abuse and misconduct that would impute a lack of integrity in plaintiff's chosen professions—that is, of physically or sexually abusing players, coaches, and umpires, or of some form of "immorality" with children that was not acceptable for CHLL coaches.

*Id*. (emphasis added).

Gexpro argues its alleged statement is capable of an innocent construction because "the statement could easily have been an assertion regarding the supply chain or some other cause not attributable to ITS Solar." (Doc. 21, p. 4). Defendants respond that "[s]uch an interpretation would require the Court to disregard completely the circumstances in which the statement was made and its context within the Counterclaim." (Doc. 26, p. 6).

Similar to *Green,* where the Illinois Supreme Court considered the context of the alleged statements, the Court must consider the alleged "three-way business relationship whereby Gexpro sold raw materials to ITS Solar, which in turn created finished products that were sold to Gexpro for further sale to McCarthy." (Doc. 13, p. 4). The alleged three-

way business relationship shows how the statement could not have easily been an assertion regarding the supply chain or some other cause not attributable to ITS Solar. Rather, the context confirms an assertion that ITS would be unable to complete the work due to an inability to purchase raw materials—the same raw materials Gexpro was allegedly providing to ITS Solar. Accordingly, Gexpro's defamatory statement is not subject to an innocent construction, and Gexpro's Motion to Dismiss is denied as to Count I.

## II.     Tortious Interference (Count II)

Gexpro argues Defendants' tortious interference claim fails because it is "premised on the exact same conduct and allegations set forth in defendants' deficient defamation claim." (Doc. 21, p. 4). But as detailed above, Defendants' defamation claim is sufficient. Gexpro next argues that "ITS Solar's pleading only offers 'a formulaic recitation of the elements of a cause of action[,]' it is insufficient to withstand Gexpro's Rule 12(b)(6) motion." (*Id*. at pp. 4-5). Gexpro then asserts that "ITS Solar fails to demonstrate any 'purposeful interference' by Gexpro." (*Id*. at p. 5).

ITS Solar does not need to *demonstrate* any purposeful interference at this stage of the litigation. Rather, at the motion to dismiss stage, the Court assesses the counterclaim under the notice pleading provisions of Federal Rule of Civil Procedure 8. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Under Rule 8, ITS Solar sufficiently pleads the elements of tortious interference. ITS Solar states it "had a valid business expectancy with McCarthy[.]" (Doc. 13, p. 6). In support for this expectancy, ITS Solar alleges it "had a longstanding business relationship with [McCarthy]." (*Id*. at p. 4). ITS Solar continues

alleging that "[t]his 3-way arrangement was initiated because, while McCarthy had always thought highly of ITS Solar's work, McCarthy had concerns about ITS Solar's financial ability to purchase raw materials in sufficient volumes to satisfy McCarthy's large needs." (*Id.*). "For this reason, Gexpro was added as an intermediary between ITS Solar and McCarthy as the customer." (*Id.*).

As for the remaining elements, ITS Solar alleges the relevant facts necessary to support its claims. ITS Solar alleges that Gexpro was aware of its business expectancy. (*Id.* at p. 6). In support of the third element, ITS Solar pleads that Gexpro "intentionally interfered with this business expectancy, inducing or causing a breach of the relationship." (*Id.*). Finally, ITS Solar "was damaged by Gexpro's tortious interference in that McCarthy terminated ITS Solar's involvement in the project at issue." (*Id.*). Accordingly, Gexpro's Motion to Dismiss is denied as to Count II.

### III.    Fraudulent Inducement (Count III)

"In Illinois, fraudulent inducement requires proof of five elements: '(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.'" *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (quoting *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992) (citations omitted)).

Gexpro argues ITS Solar's fraudulent inducement claim should be dismissed under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." FED. R. CIV. P. 9(b). The purpose of the elevated pleading standard is so parties "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469-70 (7th Cir. 1999). When claiming fraud or deception, a plaintiff is required to allege the "who, what, when, where, and how" of a case. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). More specifically, a plaintiff is required to plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation omitted).

Gexpro is correct. ITS Solar's counterclaim contains little about "who, what, when, where and how." None of the allegations specify *who* at Gexpro made the statements representing its intention to operate under the arrangement whereby Gexpro would be paid via receivables earned by ITS Solar from McCarthy. The allegations fail to specify *how* the statements were communicated, *when* the statements were communicated, and *where* the statements were communicated. Rule 9(b) requires more. Accordingly, ITS Solar's fraudulent inducement claim, Counterclaim III, must be dismissed.

CONCLUSION

For these reasons, the Motion to Dismiss Defendants' Counterclaims filed by Gexpro (Doc. 21) is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Counts I and II. The motion is **GRANTED** as to Count III, which is **DISMISSED**

**without prejudice**. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (noting that "[d]istrict courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint"). Because Defendants have indicated that they would provide substantial details and facts in an amended counterclaim and asked for permission to file an amended counterclaim, dismissal without prejudice is allowed.

Defendants have until **June 21, 2022**, to file a First Amended Counterclaim consistent with Rule 11.

    **IT IS SO ORDERED.**

    **DATED:  May 31, 2022**

                                                        _____
                                                        **NANCY J. ROSENSTENGEL**
                                                        **Chief U.S. District Judge**